IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

CLARA MOSKO,                       *

      Plaintiff,             *

         v.                 *          CIVIL NO.: WDQ-12-1781

                       *

JOHN CRANE HOUDAILLE, INC.,
        *et al.*,               *

      Defendants.            *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Clara Mosko sued Colgate Palmolive Company ("Colgate"), and
36 other companies (collectively, "the defendants"), in the
Circuit Court for Baltimore City for negligence and other claims
related to Mosko's exposure to asbestos.  Colgate removed the
action to this Court.  For the following reasons, Mosko's motion
to remand will be granted, and the action, and all other pending
motions, will be remanded to the Circuit Court for Baltimore
City.  Mosko's motion for attorney's fees and costs will be
denied.[1]

---

[1] Colgate's request for a hearing will be denied as unnecessary.
*See* L.R. 105.6 (D. Md. 2011).

I.   Background[2]

Mosko, a Florida citizen, believes that from 1961 to the
late 1970's, she was exposed to asbestos which caused her to
develop, decades later, malignant mesothelioma (lung cancer).
ECF No. 3 ¶8; ECF No. 11 at 3.

From 1966, when she graduated from high school, until 1994,
Mosko worked in the United States Department of Agriculture
building at 1200 Independence Avenue, Washington, D.C. ("the DOA
building").  ECF No. 161-2 at 79:2-81:19.[3]  The building was
often under renovation, and she was close enough to the
construction to hear hammering and drilling, but she did not
work in the areas while they underwent renovation.  *Id.* at
82:12-83:9, 84:1-19, 140:2-9.

In 1973 and 1974, the Walter E. Campbell Co., Inc.
("WECCO"), a Maryland Company, performed renovations on a
cafeteria in the DOA building.  ECF No. 173-2.  WECCO used One
Shot cement and Kaylo products in the construction.[4]  *Id.* at 1,
3; ECF No. 173 at 4.

---

[2] In considering whether a defendant has been fraudulently
joined, the Court must resolve "all issues of . . . fact in the
plaintiff's favor."  *Hartley v. CSX Transp., Inc.*, 187 F.3d 422,
424 (4th Cir. 1999).

[3] Mosko held several positions for three employers, but always
worked in the DOA building.  ECF No. 161-2 at 80:4-81:19.

[4] Kaylo was an asbestos product distributed by Owens Corning.  *In
re Joint E. & S. Dist. Asbestos Litig.*, 963 F. Supp. 314, 315

In 1977 and 1978, Mosko's then-husband, with a bricklayer and a plumber, renovated their basement, installing pink fiberglass insulation, paneled walls, a brick fireplace, and a bathroom. *Id*. at 114:2-117:21.  Mosko washed clothing that her husband had worn while working on the basement; she did not recall that the items looked dusty and she did not remember shaking them before placing them in the washing machine. *Id*. at 138:6-139:11.

On June 16, 2010, Mosko was diagnosed with lung cancer. ECF No. 2 at 13 ¶ 2.  On October 26, 2011, Mosko sued John Craine Houdaille, Inc., and 36 other companies, in the Circuit Court for Baltimore City.  ECF No. 2.  At least six of the defendants, including WECCO, are Maryland citizens.  *See* ECF No. 161-1 (identifying citizenship of defendants).

On May 16, 2012, Colgate received Mosko's answers to the defendants' joint interrogatories.  ECF No. 175 at 6.  She said that she believed she had been exposed to asbestos when she

> regularly and frequently personally used and applied
> asbestos-contaminated Cashmere Bouquet talcum powder
> manufactured, sold, supplied, marketed and distributed
> by Colgate[.]

ECF No. 103-2 at 32-33.  To the best of her knowledge, she "had no occupational or other exposures to chemicals," and was still

---

(S.D.N.Y. 1997).  One Shot cement also contained asbestos. *Asbestos v. Bordelon, Inc.*, 726 So. 2d 926, 950 (La. Ct. App. 1998).

investigating whether she had "experienced occupational,
household, or other exposures to dust" which might have caused
her cancer. *Id.* at 6.

On May 31, 2012, Mosko swore that she did not think she had
been exposed to asbestos in the DOA building, but she "thought
that [her exposure] was either at home or at work." ECF No.
161-2 at 89:9-16, 32:14-20. Mosko had not heard of several of
the defendants, and believed "the only product" containing
asbestos to which she had been exposed was Cashmere Bouquet.
*Id.* at 166:6-168:14, 171:7-12.

On June 15, 2012, Colgate removed the action to this Court.
ECF No. 1. No other defendant joined in the removal. ECF No.
161 at 4. On July 16, 2012, Mosko moved to remand the action.
ECF No. 173. On August, 2, 2012, Colgate opposed the motion to
remand and moved for judgment on the pleadings. ECF Nos. 174,
175. Mosko opposed Colgate's motion. ECF No. 184.

II. Analysis

    A.   Removal under 28 U.S.C. § 1441(a)

Under 28 U.S.C. § 1441(a), "any civil action brought in a
State court of which the district courts of the United States
have original jurisdiction, may be removed by the defendant . .
. to the district court of the United States for the district
and division embracing where such action is pending." But, if
the action may only be removed to the District of Maryland based

on diversity jurisdiction, it may not be removed if any properly joined and served defendant is a citizen of Maryland.  28 U.S.C. § 1441(b)(2).

To remove a case, the defendant must file a notice of removal in the district court within 30 days after receiving the initial pleading, or within 30 days after the defendant receives a copy of a paper from which it is first evident that the case is removable.  28 U.S.C. § 1446(a)-(b).  All defendants must join in or consent to the removal.  *Id.* § 1446(b)(2)(A).  The removing party has the burden of proving subject matter jurisdiction.  *Md. Stadium Auth. V. Ellerbe Becket, Inc.,* 407 F.3d 255, 260 (4th Cir. 2005).  Because removal raises "significant federalism concerns," the removal statutes must be strictly construed, and all doubts must be resolved in favor of remanding the case to state court.  *Id.*

B.    Fraudulent Joinder

The doctrine of fraudulent joinder allows a federal court to "disregard, for jurisdiction purposes, the citizenship of certain [in-state] defendants, assume jurisdiction over a case, dismiss th[ose] defendants, and thereby retain jurisdiction."  *Mayes v. Rapoport,* 198 F.3d 457, 461 (4th Cir. 1999).[5]  As the

---

[5] *See also B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir. 1981) (applying the fraudulent joinder rule to party asserting that an in-state defendant had been fraudulently joined), *quoted in Mayes,* 198 F.3d at 464.

party asserting fraudulent joinder, Colgate has the burden to "demonstrate either outright fraud in the plaintiff's pleading or that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court, . . . even after resolving all issues of law and fact in the plaintiff's favor." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (internal quotation marks and citation omitted).[6] The Court must "resolve all doubts about the propriety of removal in favor of retained state court jurisdiction." *Id.* at 425 (internal quotation marks omitted).

That a complaint would not survive a defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6) does not mean that that defendant has been fraudulently joined: the standard is more favorable than the 12(b)(6) standard.[7] *Id.* at 424. If there is any possibility of recovery, the defendant has not been fraud-ulently joined. *Id.* The Court may "consider the entire record," not only the complaint, to "determine the basis of joinder by any means available." *AIDS Counseling & Testing Ctr's v. Grp. W. Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990). But, it may not act as a factfinder or "delve too far

---

[6] A "glimmer of hope" for relief against the resident defendant will prevent a finding of fraudulent joinder. *See Mayes v. Rapoport*, 198 F.3d 457, 466 (4th Cir. 1999).

[7] Therefore, the Court need not determine whether, as Colgate argues, the complaint was inadequately pled. *See* ECF No. 175 at 18-24.

into the merits in deciding a jurisdictional question."
*Hartley*, 187 F.3d at 425.

    C.   Mosko's Motion to Remand

    Mosko contends that the Court must remand because she might
have been exposed to cancer-causing asbestos when WECCO per-
formed construction at the DOA building; thus, it was not
fraudulently joined and was required to join in removal.  ECF
No. 173 at 13.  Colgate counters that Mosko has identified only
Cashmere Bouquet as a potential asbestos source, and "denied
knowledge of any exposure to products of the other defendants,"
so the other defendants were fraudulently joined or nominal and
did not need to join in removing or be considered for diversity
and removal issues.  ECF No. 175 at 14-15.

    In asbestos cases, when decades often pass between a
plaintiff's exposure and diagnosis, she:

> should not be required to remember product names some
> [many] years later when [s]he had been . . . breathing
> the dust, not handling the products.  Such requirement
> would, in essence, destroy an injured bystander's
> cause of action for asbestos exposure.  Rarely would
> bystanders take note of names of materials used by
> others.

*Roehling v. Nat'l Gypsum Co. Gold Bond Bldg. Prods.*, 786 F.2d
1225, 1228 (1986).[8]

---

[8] Reversing grant of summary judgment for three defendants when
plaintiff, a pipefitter, had testified that he did not remember
which of the defendants' asbestos products he encountered at
three job sites, and other witnesses who testified to the

That Mosko has only a general idea that she may have been exposed to asbestos at the DOA building, but specifically remembers using Cashmere Bouquet and being told that Cashmere Bouquet might contain asbestos, does not render fraudulent her joinder of the other defendants. *Roehling*, 786 F.2d at 1228. She need not "remember product names" many years after using or being exposed to them, and she need not have known about the products used in the renovations around her during the 28 years she worked in the DOA building, to establish the possibility of recovery. *See id.*

Mosko has shown more than "a glimmer of hope" of recovering against WECCO, an in-state defendant, for exposure during the renovations in the DOA building.[9]   Therefore, removal was

---

asbestos products used at the work sites did not know Roehling and could not place him at the sites. *Roehling*, 786 F.2d at 1226-27.  The Fourth Circuit noted that Roehling's evidence had created "a possibility" that he was exposed to the defendants' asbestos products at other locations, but had not shown a dispute of material fact, because the other witnesses did not work at those sites at the same time as Roehling. *Id.* at 1227 n.3.

[9] Colgate argues that the Court should not consider the WECCO invoices, because they were not in the record when Colgate removed the action. ECF No. 175 at 17-18.  Mosko submits that "the many asbestos cases" she cited in her motion to remand considered evidence not on the record when the cases were removed.  ECF No. 183 at 16.  The Court may determine whether there is fraudulent joinder "by any means available," considering "the entire record," including documents submitted after removal. *AIDS Counseling*, 903 F.2d at 1004 (internal quotation marks omitted); *see also Carter v. Hitachi Koki U.S.A., Ltd.,*

improper.   28 U.S.C. § 1441(b)(2).[10]   The Court will remand the action, and all pending motions.[11]

    D.   Mosko's Request for Attorney's Fees

    Under 28 U.S.C. § 1447(c), the Court may require "payment of just costs and any actual expenses, including attorney['s] fees, incurred as a result of the removal." The Court should

---

445 F. Supp. 2d 597, 599, 601 (E.D. Va. 2006) (considering affidavits submitted after removal).

[10] Having reached this conclusion, the Court need not determine whether, as Colgate contends, the other defendants are nominal or fraudulently joined. *See* ECF No. 175 at 14-24.

[11] Colgate contends that, if the asbestos came from WECCO's construction in the DOA building, the action is removable based on federal question jurisdiction, 28 U.S.C. § 1331, and the federal officer removal statute, 28 U.S.C. § 1442(a)(1).   ECF No. 175 at 18.   Colgate's notice of removal does not identify those grounds for removal. *See* ECF No. 1 at 1-5 (discussing 28 U.S.C. §§ 1332, 1441, and 1446).   Colgate may amend its notice of removal, but only by moving to amend, and--because the thirty-day period for seeking removal has expired--"only to set out more specifically the grounds for removal that already have been stated, albeit imperfectly, in the original notice."   14C Charles A. Wright *et al.*, Federal Practice & Procedure § 3733 (4th ed. 2012); *see also In re Blackwater Sec. Consulting, LLC*, 460 F.3d 576, 590 n.8 (4th Cir. 2006).   Colgate did not raise these additional grounds for removal in a motion to amend; the memorandum does not amend the removal notice and the arguments may not be considered. *See, e.g., Innovative Med. Prods., Inc. v. Felmet*, 472 F. Supp. 2d 678, 681 (M.D.N.C. 2006) ("[A] memorandum is not a pleading . . . it cannot serve to amend Defendants' earlier notice of removal." (internal citation omitted)).   For the same reason, the Court need not consider Colgate's argument that fraudulent joinder is apparent from the face of the complaint, as the removal notice was filed more than eight months after the complaint was entered. *See* ECF No. 175 at 19; 28 U.S.C. § 1446(a)-(b).

award attorney's fees and costs[12] "only whe[n] the removing party
lacked an objectively reasonable basis for seeking removal."
*Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Mosko contends that she is entitled to attorney's fees and
costs because Colgate's theory for removal "has been
consistently and soundly rejected by . . . federal courts
applying the fraudulently joinder doctrine to asbestos
litigation," ECF No. 183 at 24, and "this very issue was . . .
recently decided in this district," ECF No. 173 at 25 (*citing
Smith v. AC&R*, No. 12-1140-MJG). Colgate counters that, in
*Smith*, the plaintiff had produced more evidence supporting his
claims against the non-diverse defendants than Mosko produced
before Colgate filed its notice of removal. ECF No. 175 at 29-
30.

In *Smith*, Judge Garbis considered whether the plaintiff,
who had sued 17 companies for injuries related to her exposure
to asbestos, had fraudulently joined non-diverse Maryland
defendants, including WECCO. *Smith v. AC&S*, No. 12-1140, ECF
Nos. 2, 20. Smith had failed to respond to all but one motion
for summary judgment filed in the Circuit Court for Baltimore
City, resulting in a grant of summary judgment for all the non-

---

[12] The Tenth Circuit noted that the District Court in *Martin* had
denied attorney's fees and costs, and affirmed denial of both.
*Martin v. Franklin Capital Corp.*, 393 F.3d 1143, 1144 (10th Cir.
2004).

diverse, in-state defendants.  *Id.*, ECF No. 1 at 2.  Judge Garbis's decision to remand the action centered on whether Smith's opposition to one in-state defendant's motion for summary judgment was "a sham[,] . . . the equivalent of fraudulent joinder."  *Id.*  Judge Garbis concluded that *the opposition* was not a sham.  Hrg. on Mot. to Remand, Apr. 27, 2012 (hereinafter "Tr.") at 47:8-9.  He stated that Smith "got this defendant in the case on a non-sham basis from the beginning," based on Smith's memorandum in opposition to the defendant's motion for summary judgment.  *Id*. at 47:17-24.

Here, Colgate contends that the evidence available, not the procedural posture of the case, or the vigor of pursuit of a defendant, shows fraudulent joinder.  *See* ECF No. 175 at 14-17.  *Smith* did not resolve that issue; Mosko is not entitled to attorney's fees and costs.

III. Conclusion

For the reasons stated above, Mosko's motion to remand will be granted.  The action, and all pending motions, will be remanded to the Circuit Court for Baltimore City.  Mosko is not entitled to attorney's fees and costs.

_____9/21/12_____
Date

_____
William D. Quarles, Jr.
United States District Judge