IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

JOYCE BARLOW,

    Plaintiff,

        v.

JOHN CRANE-HOUDAILLE, INC.,
*et al.*,

    Defendants.

               CIVIL NO.: WDQ-12-1780

CLARA G. MOSKO,

    Plaintiff,

        v.

JOHN CRANE-HOUDAILLE, INC.,
*et al.*,

    Defendants.

               CIVIL NO.: WDQ-12-1781

MEMORANDUM OPINION

Joyce Barlow and Clara G. Mosko (together, the
"Plaintiffs") sued Colgate Palmolive Company ("Colgate") and
several other companies[1] in the Circuit Court for Baltimore City
in this asbestos product liability action. *Barlow*, ECF No. 2;[2]
*Mosko*, ECF No. 2.  Colgate removed the suit to this Court; the
Plaintiffs obtained a remand to the Circuit Court. *Barlow*, ECF

---

[1] *Barlow* named 23 defendants; *Mosko* named 36 defendants.

[2] *Barlow* was initially assigned to the Honorable William M.
Nickerson.

Nos. 1, 145; *Mosko*, ECF Nos. 1, 191.   Colgate moved to vacate the remand orders and for sanctions against the Plaintiffs' counsel.[3]   *Barlow*, ECF Nos. 147, 164; *Mosko*, ECF Nos. 193, 207. Judge Nickerson consolidated the cases and denied Colgate's motions.   *Barlow*, ECF No. 165; *Mosko*, ECF No. 208.   The Fourth Circuit reversed and remanded the consolidated cases for renewed consideration of Colgate's motions, which are now pending before this Court.   *See Barlow v. Colgate Palmolive Co., et al.*, 772 F.3d 1001 (4th Cir. 2014).   Also pending are the parties' cross-motions for leave to file surreplies.   No hearing is necessary. Local Rule 105.6 (D. Md. 2014).   For the following reasons, Colgate's motions for vacatur and sanctions will be denied; the Plaintiffs' motions for leave to file a surreply will be denied; Colgate's conditional cross-motion for leave to respond to the surreply will be denied as moot.

---

[3] The Plaintiffs are represented by counsel from the Law Offices of Peter G. Angelos.   Jennifer L. Lilly, Esq., signed the Plaintiffs' motions to remand filed in federal court.   *Barlow*, ECF No. 130; *Mosko*, ECF No. 173.   Thomas P. Kelly, Esq., signed and argued the Plaintiffs' joint motion to consolidate in the Circuit Court.   ECF No. 191-5.

I.    Background[4]

This case arises from the Plaintiffs' alleged exposure to asbestos in Colgate's "Cashmere Bouquet" talcum powder.   ECF Nos. 191 at 8; 192 at 7.   In 2011, in addition to Colgate[5] and others, the Plaintiffs[6] also sued several Maryland defendants[7] in the Circuit Court for Baltimore City.   ECF No. 191 at 9.   After preliminary discovery in Circuit Court, Colgate removed the suits to this Court on the basis that the Plaintiffs would be unable to recover from the Maryland defendants; thus, they had

---

[4] The parties have filed identical supplemental briefs in connection with the pending motions for vacatur and sanctions. *See Barlow*, Civil No. WDQ-12-1780, ECF Nos. 191, 192, 193, 196, 197; *Mosko*, Civil Case No. WDQ-12-1781, ECF Nos. 227, 228, 229, 232, 233.   For convenience and ease of reading, unless otherwise noted the factual background will cite to the *Barlow* briefs. The facts are largely from Colgate's supplemental opening brief, the Plaintiff's supplemental response, and attached exhibits. ECF Nos. 191, 192.   Additional facts and relevant procedural history are from filings in the respective records.

[5] Colgate is a Delaware corporation headquartered in New York. ECF No. 191 at 9.

[6] Ms. Barlow is a citizen of Maryland.   Ms. Mosko is a citizen of Florida.   *Id.*; *Barlow*, ECF No. 2 (complaint); *Mosko*, ECF No. 2 (same).

[7] The Plaintiffs sued Maryland companies E.L. Stebbing & Co., Inc., Hampshire Industries, Inc., MCIC, Inc., and the Wallace & Gale Asbestos Settlement Trust.   ECF No. 191 at 9 n.5; *Barlow*, ECF No. 2; *Mosko*, ECF No. 2.   Ms. Mosko also sued Walter E. Campbell Co., Inc. ("WECCO") and AC&R Insulation Co., Inc.   ECF No. 191 at 9 n.5; *Mosko*, ECF No. 2.   Hereinafter the Maryland companies will be referred to as the "Maryland defendants."

been fraudulently joined[8] and the Court had subject matter

jurisdiction under 28 U.S.C. § 1332.[9]  *Id.* at 9-10.[10]

    A.   Federal Proceedings

    In July 2012, the Plaintiffs moved to remand the suits to

the Circuit Court, arguing that they "ha[d] not had the

opportunity to build a full and fair evidentiary basis" for

their claims, and there was "circumstantial evidence" of

exposure to asbestos supplied by Maryland defendants.  ECF Nos.

191-16 at 5, 14 (*Barlow* motion to remand); 191-17 at 5, 14

---

[8] "Fraudulent joinder" is a legal term of art.  *AIDS Counseling & Testing Ctr's v. Grp. W. Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990).  "[I]t does not reflect on the integrity of plaintiff or counsel, but is merely the rubric applied when a court finds either that no cause of action is stated against the nondiverse defendant, or in fact no cause of action exists."  *Id.* (quoting *Lewis v. Time Inc.*, 83 F.R.D. 455, 460 (E.D. Cal. 1979)).  The doctrine of fraudulent joinder allows a federal court to "disregard, for jurisdiction purposes, the citizenship of certain [in-state] defendants, assume jurisdiction over a case, dismiss th[ose] defendants, and thereby retain jurisdiction."  *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999).  However, a "glimmer of hope" for relief against in-state defendants is sufficient to rebut an assertion of fraudulent joinder and defeat removal.  *Id.* at 466.

[9] Under 28 U.S.C. § 1332(a)(1) (2012), "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  However, under § 1441(b)(2), a suit may not be removed "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b)(2)(2012).

[10] *See also Barlow*, ECF No. 1 (notice of removal); *Mosko*, ECF No. 1 (same).

4

(*Mosko* motion to remand).  Colgate opposed the motions on the basis, *inter alia*, that the Plaintiffs lacked evidence against the Maryland defendants.  *See e.g.*, ECF No. 191-13 at 22-25 ("[T]he record contains no evidence supporting remand.").

In *Barlow*, the Plaintiffs' counsel represented that:

> there is some circumstantial evidence to suggest Ms. Barlow could possibly have been exposed to asbestos-containing products while working at RMR Corporation.[11] Ms. Barlow testified that after her diagnosis she heard rumors that asbestos was at RMR Corporation and that she may have been exposed there. Further, Ms. Barlow was concerned enough to relay that information to her physician. The evidence is certainly circumstantial, but it cannot be said that there is no possibility that a claim could be successfully proven against any of the nondiverse defendants. . . .

> [Although] Ms. Barlow . . . testified that she did not *believe* that she was exposed to asbestos at her place of work at RMR Corporation decades ago, . . . she also testified that she heard that there may have been asbestos work done at RMR Corporation. . . .  This testimony is hardly unequivocal and leaves open the possibility that exposures to asbestos may have occurred at her workplace. Ms. Barlow's testimony show[s] that there is a possibility that Ms. Barlow could successfully pursue a claim against the non-diverse defendants.

ECF No. 191-16 at 14, 22.

In *Mosko*, the Plaintiffs' counsel represented that:

> [i]t is undisputed that Ms. Mosko was unable to identify any specific exposures while working at the Department of Agriculture ["DOA"], but given the extent of work that she recalled being done in the building, it was certainly plausible at the time plaintiff filed her Complaint that local defendants

---

[11] RMR Corporation is not a named defendant.

should be implicated. . . . In fact, Plaintiff's
counsel do have some circumstantial evidence that Ms.
Mosko may have been exposed to asbestos at the [DOA]
in the form of invoices dated throughout 1973 and into
1974, from [WECCO], a Maryland defendant who was sued
in Ms. Mosko's case. . . .

[Although] Ms. Mosko . . . testified that she did not
*believe* that she was exposed to asbestos at her place
of work at the [DOA] decades ago, but she also
testified that the only places she could have been
exposed were at work and at home. This testimony is
hardly unequivocal and leaves open the possibility
that exposures to asbestos may have occurred at her
workplace. Ms. Mosko's testimony, coupled with the
Walter E. Campbell receipts, show that there is a
possibility that Ms. Mosko could successfully pursue a
claim against the non-diverse defendants.

ECF No. 191-17 at 4-5.

Both motions to remand were granted. *Barlow*, ECF No. 145

(Remand Order); *Mosko*, ECF No. 191 (same). In *Barlow*, Judge

Nickerson credited Ms. Barlow's argument that "there remains a

possibility that she was exposed to asbestos while working at

RMR Corporation" and "her belief that she was exposed to

asbestos by her use of Cashmere 'does not negate the possibility

that she was exposed to asbestos from other sources.'"  ECF No.

191-3 at 7 (citation omitted).[12]  In *Mosko*, this Court found more

than "a glimmer of hope" of recovery against WECCO for exposure

during DOA renovations.  ECF No. 191-2 at 9.[13]  The Court

reasoned that although Ms. Mosko "has only a general idea that

---

[12] *See also Barlow*, ECF No. 144 at 6 (Memorandum Opinion).

[13] *See also Mosko*, ECF No. 190 at 7 (Memorandum Opinion).

she may have been exposed to asbestos at the DOA building, [and] specifically remembers using Cashmere Bouquet," her joinder of Maryland defendants was not "fraudulent." *Id*.

   B.   State Proceedings

   In October and November 2012, the Plaintiffs filed motions in Circuit Court to sever their cases from a March 2013 trial group and consolidate their cases with two others for a July 2013 trial. ECF Nos. 191-5 (motion to consolidate); 191-4 (the Plaintiffs' Reply filed in connection with motion to sever); 192-8 (same). The Plaintiffs argued that "[a]ll allege exposure to asbestos-containing *Cashmere Bouquet powder products only* and do not allege exposure to any other asbestos, asbestos-- containing products or asbestos containing dust in any other form." ECF No. 191-4 at 8 (emphasis added). "In short," the Plaintiffs argued, "there is *absolutely no evidence* to indicate or even suggest that the Plaintiffs were exposed to asbestos in any form other than Cashmere Bouquet." *Id*. at 10 (emphasis added). Colgate opposed severance and consolidation, relying, *inter alia*, on the possibility of worksite exposure. ECF No. 192-5 at 46.

   At a December 5, 2012 hearing on consolidation before the Honorable John M. Glynn, Colgate's counsel contended that the Plaintiffs' counsel had "told the federal judges that they have claims against defendants and . . . their clients were exposed

7

to other asbestos sources.  And now they are saying the opposite."  ECF No. 192-9 at 5; *see also* ECF No. 191-6.  Judge Glynn addressed Kelly, who had argued the motion for the Plaintiffs: "I can't believe you actually told Judge Nickerson and Judge Quarles one thing and tell me another one. . . .It is a one-defendant case, right?"  ECF No. 191-6 at 5.  Kelly responded, "[y]es."  ECF No. 191-6 at 5.  Kelly explained that the burden on the Plaintiffs to obtain remand was "extremely low," and Judge Nickerson and this Court knew that the Plaintiffs had testified that they "were only exposed to Cashmere Bouquet" and were "not exposed to any other asbestos product."  *Id.*  Kelly further stated that "[i]t's possible" that the Plaintiffs had been exposed to asbestos at work.  *Id.* at 6.

Thereafter, the following exchange occurred:

Judge Glynn: So you told the judges in [federal court] that you were contending there was no viable claim against any of these other defendants?"

Kelly:       All we had to prove in federal court is that there was a glimmer of hope. And the glimmer of hope is we alleged in the complaint a case against Maryland defendants. And based on the facts as they existed at that time back in June, that there were some possibility -- microscopic is all we have to show -- that there is some possibility that the plaintiffs will have a viable claim against a Maryland defendant.

Judge Glynn: So once the case came back here, the glimmer disappeared?

8

Kelly:          The glimmer is in federal court. . . .

Judge Glynn: What exactly did you tell them? You told
                them you filed a claim against in-state
                defendants?

Kelly:          It's recited in their order. . . .We
                recited . . . what possibility there was
                that each might have been exposed to the
                products of a Maryland defendant.

Judge Glynn: What was the possibility that you
                recited?

Kelly:          I just told you.  Ms. Mosko worked at the
                [Federal Drug Administration ("FDA")].
                There [are] defendants like [WECCO] who
                worked at the FDA . . . .[s]o there is
                the possibility.  But the reality is--and
                the federal court knew that--is that she
                said before it was removed, I wasn't
                exposed at the FDA.  I wasn't exposed at
                any location other than the houses where
                I used Cashmere Bouquet.

*Id.*

    The Plaintiffs did not oppose dismissal of claims against
Maryland defendants--including WECCO.  ECF Nos. 191-20 at 3-4,
7-8 (order on unopposed motions for summary judgment); 191-21
(stipulation of dismissal); 191-22 (same).

    C.   Motions Filed in Federal Court

    In February 2013, Colgate moved for sanctions against the
Plaintiffs' counsel. *Barlow*, ECF No. 147; *Mosko*, ECF No. 193.
In May 2013, the suits were consolidated before Judge Nickerson.

*Mosko*, ECF No. 195.[14]   In June 2013, Judge Nickerson held a

hearing on Colgate's sanctions motion; Colgate then moved for

vacatur of the orders of remand under Fed. R. Civ. P. 60(b)(3).

*Barlow*, ECF Nos. 163, 164; *Mosko*, ECF Nos. 206, 207.[15]

---

[14] At a May 2013 hearing in the Circuit Court, Colgate sought
discovery from WECCO to determine the extent to which Ms. Mosko
may have been exposed to asbestos at the DOA.  ECF No. 192-1 at
18-19.  The Plaintiffs accused Colgate of engaging in a
"tremendous legal fiction" because its discovery request
confirmed that the suit belonged in state court.  *Id.* at 22.
Judge Glynn noted that Colgate was "sort of ruining [its] claim
[for sanctions] in Federal Court."  *Id.*  In challenging
Colgate's discovery request, the Plaintiffs relied on deposition
testimony by Ms. Mosko stating that she had not worked in the
parts of the DOA building under renovation because they "would
close off [those] wings or areas," she had never seen visible
asbestos dust, and she did not believe that she had been exposed
to asbestos at the DOA.  ECF No. 192-1 at 20-21, 25.  Ms.
Mosko's sisters testified that when they had visited Ms. Mosko
at work, they had not observed construction or remodeling in the
cafeteria or Ms. Mosko's workspace.  *Id.* at 25.  The Plaintiffs
argued, "This case is about Colgate . . . ."  *Id.*

[15] Colgate's motion had sought "monetary and/or nonmonetary
sanctions," and such other relief as the Court may deem
appropriate."  *See, e.g.*, *Barlow*, ECF No. 147 at 2.  At the
hearing, Colgate clarified that "the relief we would seek . . .
[is] to obtain the forum for Colgate that it deserves."  *See,
e.g.*, *Barlow*, ECF No. 150 at 30-31 (Hr'g Tr.).  When Judge
Nickerson inquired whether "the specific relief you're asking is
to strike the Order of Remand . . . [i]n both cases?," Colgate
responded, "[y]es."  *Id.* at 31.  On appeal, Colgate framed the
issues as whether (1) the district court erred in finding "that
it lacked jurisdiction to vacate the remand orders," and (2) the
Fourth Circuit "should remand with instructions to vacate the
remand orders in light of [the] Plaintiffs' fraudulent
misrepresentations."  ECF No. 192-15 at 32, 44 (Colgate's
opening brief); *see also id.* at 61 ("[V]acatur is the only
sanction that would suffice . . . .").

On June 26, 2013, Judge Nickerson denied both motions. Although the statements by Plaintiffs' counsel in federal and state were "in sharp conflict," Judge Nickerson held that he lacked jurisdiction to vacate the orders of remand.  *See, e.g.,* *Barlow*, ECF No. 165 at 1 (Order).  Judge Nickerson noted that the only sanction Colgate sought was vacatur, but "[w]ere [he] to consider other possible sanctions, [he] would decline to impose them as well."  *Id*.  Although the conflicting statements were "troubling," Judge Nickerson "recognize[d] that those statements [were] attributable to different attorneys in markedly different litigation contexts."  *Id*.  Thus, he was "not convinced that counsel's conduct [was] sanctionable."  *Id*.

D.   Appellate Proceedings

On Colgate's appeal to the U.S. Court of Appeals for the Fourth Circuit, a divided panel affirmed Judge Nickerson's Orders.  *Barlow v. Colgate Palmolive Co.*, 750 F.3d 437 (4th Cir.), *rev'd on reh'g en banc*, 772 F.3d 1001 (4th Cir. 2014). However, on November 25, 2014, the *en banc* Fourth Circuit reversed Judge Nickerson and remanded the suits for consideration of Colgate's motions on the merits.  *Barlow*, 772 F.3d at 1013.

As to Colgate's motion for sanctions, the Fourth Circuit held that a district court has "jurisdiction to impose sanctions after remanding an action to state court."  *Id*. at 1008.

11

However, the Fourth Circuit found that "[i]t [was] unclear whether the district court in this case recognized [that it had jurisdiction to impose sanctions]." *Id.* at 1009.[16]

As to Colgate's Rule 60(b)(3) motion, the Fourth Circuit distinguished "reviewing" an order of remand from "vacating" an order, and held that 28 U.S.C. § 1447(d)[17] does not preclude

_____

[16] The Fourth Circuit observed:

> After declining to vacate the remand orders, the
> district court continued that it would deny relief
> "[w]ere the Court to consider other possible
> sanctions." . . . This statement implicitly
> acknowledges that the court was not making a
> determination on the merits in regard to sanctions
> other than vacatur, but the orders fail to explicitly
> state why. On one hand, it appears that the court
> thought that Colgate sought only vacatur. Thus, the
> district court would naturally treat its consideration
> of other sanctions as only hypothetical—knowing that
> it would have jurisdiction to consider such sanctions
> if they were sought. On the other hand, one can
> construe the discussion as controlled by the district
> court's determination in the directly preceding
> paragraph that it lacked jurisdiction to afford relief
> under § 1447(d). In other words, the court was
> opaquely saying that if it "were" to have jurisdiction
> to consider Rule 11 sanctions, it would decline to
> issue any. . . .

> On remand, the district court is directed to make
> specific findings—supported by cogent reasoning—on
> whether Plaintiffs engaged in misconduct while in
> federal court and whether Rule 11 relief is warranted.

*Barlow*, 772 F.3d at 1010, 101.

[17] Section 1447(d) provides, *inter alia*, that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise . . . ." 28 U.S.C. § 1447(d)(2012).

vacatur. *Id.* at 1010. The Fourth Circuit reasoned that Rule 60(b)(3) "focuses on the unfair *means* by which a judgment or order is procured"; thus, it does not involve an assessment of the order's *merits* and is not properly considered a review of the order under § 1447. *Id.* at 1010-1012 (emphasis added). Accordingly, it remanded the cases "for reconsideration of Colgate's motions in full and in light of this opinion." *Id.* at 1010.

E.  Subsequent Procedural History

On remand, *Barlow* and *Mosko* were assigned to this Court; on December 18, 2014, the Court reopened the cases. *Barlow*, ECF No. 186; *Mosko*, ECF No. 220. On January 12, 2015, the Court approved the parties' joint status report and proposed schedule on supplemental briefing on the motions for sanctions and vacatur. *See, e.g., Barlow*, ECF No. 190.

On February 11, 2015, Colgate filed its supplemental opening brief. *Barlow*, ECF No. 191; *Mosko*, ECF No. 227. On February 25, 2015, the Plaintiffs responded. *Barlow*, ECF No. 192; *Mosko*, ECF No. 228. On March 11, 2015, Colgate replied. *Barlow*, ECF No. 193; *Mosko*, ECF No. 229. On March 26, 2015, the Plaintiffs moved for leave to file a surreply. *Barlow*, ECF No. 196; *Mosko*, ECF No. 232. On April 13, 2015, Colgate opposed the motions and conditionally cross-moved for leave to respond to the surreply. *Barlow*, ECF No. 197; *Mosko*, ECF No. 233.

## II.  Analysis

### A.   Motion to Vacate

#### 1.   Legal Standard

Under Rule 60(b)(3), a party may seek relief from a final judgment or order on the basis of "fraud . . ., misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3).  To prevail, a movant must establish (1) "a meritorious [claim or] defense," (2) "misconduct by clear and convincing evidence," and (3) that "the misconduct prevented the moving party from fully presenting its [claim or defense]." *Schultz v. Butcher*, 24 F.3d 626, 630 (4th Cir. 1994) (*citing Square Constr. Co. v. Washington Metro. Area Transit Auth.*, 657 F.2d 68, 71 (4th Cir. 1981)).  If the movant satisfies this burden, the Court must balance the "competing policies favoring the finality of judgments and justice being done in view of all the facts, to determine, within its discretion, whether relief is appropriate in each case." *Id.* (*quoting Square*, 657 F.2d at 71).

#### 2.   Meritorious Claim

As a threshold matter, Colgate must demonstrate that it has a meritorious "'claim' of entitlement to a federal forum." *Barlow*, 772 F.3d at 1013 n.12.; *Square Constr.*, 657 F.2d at 71.[18]

---

[18] The Fourth Circuit recognized that Rule 60(b)(3) typically "relieve[s] a party of a determination on a case's substantive

This "requires a proffer of evidence which [if believed] would . . . establish a valid [claim]." *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988); *Green v. Foley*, 856 F.2d 660, 661 (4th Cir. 1988); *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982). "[C]onclusive proof is not required"; however, Colgate must demonstrate more than "a bare allegation" of entitlement to a federal forum. *H & W Fresh Seafoods, Inc. v. Schulman*, 200 F.R.D. 248, 253-54 (D. Md. 2000) (internal quotation marks and citation omitted). "The underlying concern is . . . whether there is *some possibility* that the outcome [would have been different]." *Augusta*, 843 F.2d at 812 (*quoting* 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2697, p. 531 (2d ed. 1983)) (emphasis added).

Fraudulent joinder applies when there is "either outright fraud in the plaintiff's pleading or there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court, . . . even after resolving all issues of law and fact in the plaintiff's favor." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (internal quotation marks and citation omitted) ("slight

---

grounds"; however, neither "the Federal Rules of Civil Procedure [n]or our precedent limit Rule 60(b)(3)'s applicability to judgments on a case's merits." *Barlow*, 772 F.3d at 1013 n.12.

possibility of a right to relief" is sufficient to obtain

remand); *Mayes*, 193 F.3d at 461 (a "glimmer of hope" for relief

against in-state defendants is sufficient to obtain remand).

Colgate argues that the Plaintiffs' counsel's statements

about the "state of the evidence that [the] Plaintiffs had

developed" prevented Colgate from demonstrating that the

Plaintiffs had no possibility of relief against the Maryland

defendants, and had no intention of pursuing claims against

those defendants. ECF No. 191 at 23, 24.[19]  The Plaintiffs

assert that Colgate's motion must fail because it "cannot

establish fraudulent joinder," and because their "subjective

intent is irrelevant."  ECF No. 192 at 22, 24.

> a.   No Possibility of Relief

Given the procedural posture of this case, Colgate must

proffer facts that, if believed, demonstrate "some possibility"

that the Court would have concluded that the Plaintiffs had "no

possibility" of relief against the Maryland defendants; thus,

contrary to the Plaintiffs' argument, Colgate need not

conclusively establish fraudulent joinder.  *Augusta*, 843 F.2d at

812; *Hartley*, 187 F.3d at 424.[20]  To support its meritorious

---

[19] For convenience and ease of reading, the Court will cite to
the parties' arguments in the *Barlow* briefs.

[20] The Plaintiffs have not addressed the effect of their
counsel's statements--as proffered by Colgate--on the fraudulent
joinder analysis.  *See* ECF No. 192 at 22-23.  Thus, the

claim to a federal forum, Colgate proffers the Plaintiffs'
counsel's representations in Circuit Court that "there is
absolutely no evidence to indicate or even suggest that the
Plaintiffs were exposed to asbestos in any form other than
Cashmere Bouquet," and "[i]t is a one-defendant case." ECF Nos.
191-4 at 10; 191-6 at 5. According to Colgate, had the
Plaintiffs' counsel "admitted to this Court" what they told the
Circuit Court, Colgate "would have had a far stronger case for
defeating [remand]." ECF No. 191 at 23.

The Court disagrees. Colgate relies not on new or
undisclosed facts, but on the Plaintiffs' counsel's *arguments*
about the evidence. In *Barlow* and *Mosko*, the Plaintiffs
informed Judge Nickerson and this Court that they did not
believe that they had been exposed to asbestos at their
respective worksites. *See* ECF Nos. 191-16 at 14, 22; 191-17 at
4-5. However, as discussed above,[21] the suits were remanded
because the *possibility* of the Plaintiffs' exposure to asbestos
at their respective worksites provided more than a "glimmer of
hope" of recovery under the Fourth Circuit's fraudulent joinder
test. ECF Nos. 191-2 at 9; 191-3 at 7. Accordingly, Judge

---

Plaintiffs appear to have misconstrued the inquiry as whether
Colgate *had* a meritorious claim under the facts presented when
the motions to remand were decided, not--as is the case--whether
Colgate *has now demonstrated* a meritorious claim.

[21] *See supra* Section I.A.

Nickerson and this Court rejected Colgate's argument that there was "no evidence supporting remand"[22]--the same argument Colgate now insists the Plaintiffs should have "admitted."  But the Plaintiffs were under no obligation to agree with Colgate's assessment of the evidence.  That the Plaintiffs' counsel decided that it aided their clients to present a different argument to the Circuit Court on a different matter (consolidation) does not mean that the Maryland defendants were fraudulently joined.  *See Barlow*, 772 F.3d at 1016 (Davis, S.J., dissenting) ("[T]he 'glimmer of hope' test could be *ethically* discarded given the changed legal landscape and in light of a client's best interest. Nothing new here.").  In sum, Colgate has not proffered sufficient *facts* showing its entitlement to a federal forum.  *Cf. Schultz*, 24 F.3d at 631 (meritorious defense demonstrated when plaintiff failed to produce discovery "favorable to [his] adversary"); *Green*, 865 F.2d at 661 (meritorious defense demonstrated when plaintiff misrepresented his status as a holder of a promissory note, which defendant did not learn until he received untimely discovery).[23]

_____

[22] *See, e.g.*, ECF No. 191-13 at 24.

[23] To find entitlement to a federal forum (*i.e.*, to find "some possibility" of fraudulent joinder) on the basis of an argument about the strength of the evidence, without a proffer of facts, comes very close to an impermissible review of the merits of the remand order.  *See, e.g.*, *Barlow*, 772 F.2d at 1010 ("Critically, [28 U.S.C.] § 1447(d) prohibits 'reviewing' an order . . . .").

b.   Intent

As to intent, the parties dispute the proper interpretation of the U.S. Supreme Court's century-old statement that, "[o]n the question of removal we have not to consider more than *whether there was a real intention to get a joint judgment, and whether there was a colorable ground for it* shown as the record stood when the removal was denied." *Chicago, R.I. & P. Ry. Co. v. Schwyhart*, 227 U.S. 184, 194, 33 S. Ct. 250, 251, 57 L. Ed. 473 (1913) (emphasis added).   The Plaintiffs urge the Court to adopt the reasoning stated in *Selman v. Pfizer, Inc.*, No. 11-CV-1400-HU, 2011 WL 6655354 (D. Or. Dec. 16, 2011).   ECF No 192 at 27-28.   Colgate urges the Court to adopt the reasoning stated in *Riverdale Baptist Church v. Certainteed Corp.*, 349 F. Supp. 2d 943 (D. Md. 2004).   ECF No. 193 at 14-15.   The Court finds *Riverdale* persuasive; however, as discussed *infra*, Colgate has not met its burden of showing an entitlement to a federal forum based on the Plaintiffs' purported lack of intent to obtain a judgment against the Maryland defendants.

*Selman* held that the phrase "real intention to get a joint judgment" refers to "the *objective* fact of a well-stated claim against the resident defendant," not "the plaintiff's *subjective* intent."   2011 WL 6655354, at *7.   The *Selman* Court reasoned that the "it" in the second clause ("whether there was a colorable ground for *it*") referred back to the entirety of the

19

first clause; in other words, there must "be a 'colorable ground' for the 'real intention to get a joint judgment.'"  *Id.* According to *Selman*, "[i]t seems unlikely that the [U.S. Supreme] Court would ask whether . . . there was a 'colorable ground' for a plaintiff's subjective intent."  *Id.*  Thus, *Selman* concluded, the Court need only inquire "whether the plaintiff stated a claim against a resident defendant and whether there was a 'colorable ground' for that claim."  *Id.*

Contrary to *Selman*'s reasoning, the plain language of *Schwyart* suggests that the "it" in the second clause refers to the phrase "joint judgment"; in other words, "[o]n the question of removal we have not to consider more than [1] whether there was a real intention to get a joint judgment, and [2] whether there was a colorable ground for [the joint judgment] shown as the record stood when the removal was denied."  Although *Selman* correctly concludes that the Court must decide whether a plaintiff has a colorable claim for a joint judgment, it reads out the first requirement for a Court to decide whether a plaintiff has a "real intention" to secure a joint judgment. Further, it--incorrectly in this Court's view--relies on the U.S. Supreme Court's statement about the immateriality of a plaintiff's motive in joining a resident defendant as support for its interpretation.  *See Selman*, 2011 WL 6655354, at *7

(noting that the Supreme Court in *Schwyart* rejected the view that fraudulent joinder turned on the plaintiff's motive).

Under *Schwyart*, "the motive of the plaintiff [in joining a resident defendant], *taken by itself*, does not affect the right to remove.  If there is . . . joint liability, he has an absolute right to enforce it, whatever the reason that makes him wish to assert the right."  227 U.S. at 193, 33 S. Ct. 250 (emphasis added).  A few years later, the Supreme Court held that, notwithstanding state law on joint liability, the joinder of a resident defendant (the plaintiff's co-worker) was fraudulent because it was "without any reasonable basis in fact and without any purpose to prosecute the cause in good faith against the [defendant]."  *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 98-99, 42 S. Ct. 35, 38, 66 L. Ed. 144 (1921).  The *Wilson* Court relied on facts proffered by the removing defendant (the plaintiff's employer) showing that the plaintiff had previously pursued a claim in federal court solely against it but had voluntarily dismissed the suit when it appeared that he would not succeed; the plaintiff had then filed a complaint in state court against the employer and co-worker when the plaintiff knew that the co-worker was not responsible for his injuries.  257 U.S. at 94, 97, 42 S. Ct. 35.

Accordingly, in *Wilson*, the Supreme Court relied on the suit's prior procedural history to find that the plaintiff had

not intended to pursue his claim against the co-worker in good faith, and relied on the lack of evidence of the co-worker's liability to find that the joinder lacked a factual basis. Thus, although a plaintiff's motive in joining a resident defendant--*e.g.*, avoiding the federal forum--alone is insufficient to defeat remand to state court, contrary to *Selman*, a defendant may defeat remand by proffering facts showing that the plaintiff never intended to obtain a joint judgment against the resident defendant. *See Wilson*, 257 U.S. at 97, 42 S. Ct. 35; *Martin v. Norfolk & W. Ry. Co.*, 43 F.2d 293, 295 (4th Cir. 1930)("[T]he plaintiff's purpose in joining a resident defendant is immaterial"; however, when the defendant proffers facts "lead[ing] to the rational conclusion . . . that the joinder was made without any purpose to prosecute the action in good faith against the resident defendant and with the purpose of fraudulently defeating the right of removal, the right of removal should be sustained.").

 *Riverdale* has a more nuanced view of fraudulent joinder. In *Riverdale*, the Honorable Deborah K. Chasanow recognized that the subjective "real intention" test appears to contradict the Fourth Circuit's objective "no possibility of success" test for fraudulent joinder; according to Judge Chasanow, however, the latter test "is more properly applied not rigidly, but--as it was intended--as a proxy for the detection of fraud in joinder."

349 F. Supp. 2d at 947-948.  Under Judge Chasanow's view, the

"no possibility of success" test has not necessarily displaced

the "real intention" test, but rather is "a means for

ascertaining whether joinder was grounded in a 'real intention

on colorable grounds,' or [was] merely 'a sham and frivolous.'"

*Id.* (*citing Schwyart; Parks v. New York Times Co.*, 308 F.2d 474,

477 (5th Cir. 1962); *Morris v. E.I. Du Pont De Nemours &*

*Company*, 68 F.2d 788 (8th Cir.1934)).[24]  This interpretation is

consistent with the above-described Supreme Court and Fourth

Circuit cases that permit inquiry into whether the plaintiff is

pursuing claims against resident defendants in good faith.[25]

---

[24] *Parks* interprets *Morris* as standing for the propositions that
joinder is fraudulent when (1) the plaintiff has failed to state
a claim against the resident defendant, or (2) the alleged facts
"are shown to be so clearly false as to demonstrate that no
factual basis existed for any honest belief on the part of
plaintiff that there was joint liability."  *Parks*, 308 F.2d at
477 (*citing Morris*, 68 F.2d at 792).

[25] *Riverdale* is also consistent with several lower court cases in
the Fourth Circuit and elsewhere.  *See, e.g., Linnin v.
Michielsens*, 372 F. Supp. 2d 811, 823-24 (E.D. Va. 2005)
(fraudulent joinder doctrine applied when the plaintiff had "no
intention of getting a joint judgment" regardless of whether the
resident defendant could be found liable; the plaintiff had
"nothing to gain from joining [the resident defendant] except
for defeating diversity" because he was "a lowly employee"
against whom recovery would be impossible); *Joe v. Minnesota
Life Ins. Co.*, 257 F. Supp. 2d 845, 850 (S.D. Miss. 2003)
(evidence suggested that resident defendants were "more aligned
with the plaintiff than with the [non-resident] defendants";
thus, the plaintiff "[had] no good faith intention of
prosecuting her claim against [those] resident defendants"); *In
re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine)
Products Liab. Litig.*, 220 F. Supp. 2d 414 (E.D. Pa. 2002)

Accordingly, a removing defendant may defeat remand by showing that the plaintiffs cannot succeed against the resident defendant,[26] or by showing that the plaintiffs never intended to.[27]

On the merits, Colgate argues that the Plaintiffs' counsel's statements in federal court prevented Colgate from arguing that the Plaintiffs never intended to obtain a judgment against the Maryland defendants. ECF No. 191 at 24. By way of support, Colgate relies on the lack of post-remand discovery from the Maryland defendants and the Plaintiffs' voluntary dismissal of those defendants. *Id.* at 25; *see also* ECF Nos. 191-20 at 3-4; 191-20; 191-22.

Courts are reluctant to find "fraudulent joinder by hindsight" when non-diverse or resident parties are *involuntarily* dismissed from a suit. *See, e.g., Day v. Liberty*

---

(declining to decide whether the plaintiffs had a colorable claim against the non-diverse defendants because the plaintiffs had no real intention to obtain a judgment against those defendants; the plaintiffs had declined to prosecute claims against the non-diverse defendants in similar cases and agreed to dismiss them "in exchange for their refusal to consent to removal").

[26] *See, e.g., Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 218-19 (4th Cir.) *cert. denied*, 135 S. Ct. 2868 (2015) (plaintiff's complaint lacked sufficient facts about non-diverse defendants' liability; thus there was "no possibility" of success against those defendants, and the fraudulent joinder doctrine applies).

[27] *See, e.g., Linnin*, 372 F. Supp. 2d at 823-24.

24

*Mut. Fire Ins. Co.*, No. 1:13CV16, 2013 WL 1890725, at *4 (N.D.W.
Va. May 6, 2013) (*citing Riverdale*, 349 F. Supp. 2d at 954)
(fraudulent joinder cannot rest solely on the state court's
ruling on the merits of the plaintiff's claim).[28]  Although in
this case the Plaintiffs *voluntarily* dismissed the Maryland
defendants, courts finding a lack of intent to obtain a judgment
based on voluntary dismissals have relied on evidence of a
pattern of previous dismissals or lack of claim prosecution.
*See Wilson*, 257 U.S. at 94, 97; *Joe*, 257 F. Supp. 2d at 850 &
n.9 (relying on evidence that plaintiffs in prior related cases
never moved for default judgment against the resident defendants
when they failed to answer the complaint; inferring that "this
plaintiff, as have other plaintiffs in [prior related cases] has
no good faith intention of prosecuting her claim against these
resident defendants"); *In re Diet Drugs*, 220 F. Supp. 2d at 421
(noting "the universal lack of prosecution of the [non-diverse]
defendants" in related cases).

　　　Colgate has not provided--nor has the Court found--
authority for the proposition that a plaintiff's post-remand

---

[28] *See also Deming v. Nationwide Mut. Ins. Co.*, No. CIV .A.
3:03CV1225, 2004 WL 332741, at *3 (D. Conn. Feb. 14, 2004)
("Normally, dismissal of resident defendants will not create
diversity jurisdiction unless the dismissal was [voluntary]";
defendant could not demonstrate fraudulent joinder by showing
that the state court had ruled against the plaintiff on the
merits of her claims against non-diverse defendants).

voluntary dismissal of resident defendants--or decision not to pursue discovery--sufficiently shows a lack of good faith intent to obtain a judgment for the purpose of establishing a meritorious claim to a federal forum.  In other words, Colgate has not persuaded the Court that it should find bad faith from the Plaintiffs' post-remand conduct.  Further, to do so would invite Rule 60(b)(3) motions to vacate remand orders every time a plaintiff decides to dismiss a diversity jurisdiction-defeating defendant from state litigation on the basis that they had misrepresented their intent to obtain a judgment against those defendants.  Put simply, the Plaintiffs were not obliged to disclose litigation strategy to Colgate.  Accordingly, Colgate has not met its threshold requirement of showing a meritorious claim to a federal forum under the "no possibility of relief" prong or the "intent" prong; thus, its motions to vacate will be denied.

    B.   Motion for Sanctions

        1.   Legal Standard

Under Rule 11(b), an attorney or unrepresented party must certify to the court that to the best of his or her "knowledge, information, and belief," formed after a reasonable inquiry: (1) the action is not being presented for an improper purpose, (2) the legal contentions are warranted, (3) the facts alleged have or will have evidentiary support, and (4) denials of facts are

based on evidence or lack of knowledge. *See* Fed. R. Civ. P. 11(b). "[I]mproper purpose may be inferred from a claim's lack of factual or legal foundation or other factors such as the timing of filing of the complaint." *Giganti v. Gen-X Strategies, Inc.*, 222 F.R.D. 299, 313 (E.D. Va. 2004) (*citing In re Kunstler*, 914 F.2d 505, 518 (4th Cir. 1990)). Rule 11(c) allows attorneys and parties to be sanctioned for Part (b) violations. Fed. R. Civ. P. 11(c).[29] The Court also has inherent power to sanction a party. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991); *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993) (Rule 11 does not "displace[] the court's inherent power to impose sanctions for . . . bad faith conduct").

---

[29] The sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4)

Additionally, Rule 11's "safe harbor" provision requires a party seeking sanctions to serve the Rule 11 motion at least 21 days before filing it; this provides an opportunity for withdrawal or correction of the challenged pleading. Fed. R. Civ. P. 11(c)(2). The safe harbor defense is waived if not properly asserted. *Bond v. Blum*, 317 F.3d 385, 400 (4th Cir. 2003) (*citing Rector v. Approved Fed. Savings Bank*, 265 F.3d 248 (4th Cir. 2001)). Here, Colgate certified that it had served its motion for sanctions on the Plaintiffs 21 days before filing it. *See Barlow*, ECF No. 147-1 at 23; *Mosko*, ECF No. 193-1 at 24. In any event, the Plaintiffs have waived the safe harbor defense by failing to raise it in their opposition.

            2.   Colgate's Motion

    Colgate argues that sanctions are merited because the

Plaintiffs "actively cultivated the impression" in federal court

that their claims against the Maryland defendants were

"legitimate, good faith attempts to secure judgment, and then

repudiated that very notion" in state court.  ECF No. 191 at 27.

The Plaintiffs argue that sanctions are inappropriate because

the "statements were made in significantly different legal

contexts" and had evidentiary support.  ECF No. 192 at 12, 33.[30]

---

[30] The Plaintiffs further argue that Colgate has abandoned its
claim for sanctions other than vacatur.  ECF No. 192 at 30.  The
Plaintiffs rely on Colgate's statements at a June 2013 hearing
before Judge Nickerson and its opening brief on appeal, which
suggest that Colgate did not seek any sanction other than
vacatur of the remand orders.  *See, e.g.*, ECF Nos. 150 at 30-31;
192-15 at 32, 44, 61.   Colgate argues that it has not abandoned
its request for other sanctions.  ECF No. 193 at 20.   In
support, Colgate relies on its supplemental brief on appeal,
which is not in the record on remand.  *Id.* (*citing* Supplemental
Br. for Defendant-Appellant, *Barlow v. Colgate Palmolive Co.*,
No. 13-1839(L), at 6 (4th Cir. filed July 31, 2014) (Dkt. 57)).

The Fourth Circuit "directed [the district court] to make
specific findings--supported by cogent reasoning--on whether
[the] Plaintiffs engaged in misconduct while in federal court
and whether Rule 11 relief is warranted."  *Barlow*, 772 F.3d at
1012.  It did not address what sanctions may be available.
Mindful that the Court must "implement both the letter and
spirit of the . . . [Fourth Circuit's] mandate, taking into
account [its] opinion and the circumstances it embraces,"
*Georgia Pac. Consumer Products, LP v. Von Drehle Corp.*, 710 F.3d
527, 536 (4th Cir. 2013), and because the Court can resolve the
motion on its merits, the Court will assume, without deciding,
that Colgate has not abandoned its claim for sanctions.

Although Colgate contends that it is not seeking to "estop"
the Plaintiffs, ECF No. 193 at 8, to support its contention that
the Plaintiffs impermissibly changed their position with respect
to the Maryland defendants, Colgate relies on cases applying the
doctrine of judicial estoppel,[31] ECF No. 191 at 30 (*citing New
Hampshire v. Maine*, 532 U.S. 742, 121 S. Ct. 1808, 149 L. Ed. 2d
968 (2001); *Folio v. City of Clarksburg, W.Va.*, 134 F.3d 1211,
1218 (4th Cir. 1998); *Sedlack v. Braswell Servs. Grp., Inc.*, 134
F.3d 219, 224 (4th Cir. 1998)). However, such cases are
inapposite; whether the Plaintiffs should have been estopped
from asserting an inconsistent position in Circuit Court post-
remand was for the Circuit Court to decide. *See, e.g., Sedlack*,
134 F.3d at 224 ("[T]he party sought to be estopped must assert
a position inconsistent with that taken in prior litigation
[*i.e.*, in federal court]."). Further, estoppel applies to
positions of fact, not law. *Zinkand*, 478 F.3d at 638; *Sedlack*,
134 F.3d at 224. Here, the underlying facts had not changed;
rather, the Plaintiffs changed their legal position with respect
to the facts. *Compare, e.g.*, ECF No. 191-16 at 14, 22 (the

---

[31] Judicial estoppel "prevents a party from taking a position in
a judicial proceeding that is inconsistent with a stance
previously taken in court." *Zinkand v. Brown*, 478 F.3d 634, 638
(4th Cir. 2007). Estoppel applies when (1) a party seeks to
adopt an inconsistent factual position from one taken in prior
litigation; (2) the court accepted the prior position; and (3)
the party "intentionally misled the court to gain unfair
advantage." *Id.* (*quoting Tenneco Chems., Inc. v. William T.
Burnett & Co.*, 691 F.2d 658, 665 (4th Cir. 1982))

possibility of worksite exposure means that Colgate has not

shown "no possibility" of a claim against the Maryland

defendants), *with* ECF Nos. 191-4 at 8; 191-6 at 5-6 (worksite

exposure was "possible," but consolidation merited because the

evidence did not suggest exposure to other sources of asbestos).

*See Folio*, 134 F.3d at 1218 (judicial estopppel inapplicable

because the party did not advance an inconsistent factual

position; it "merely present[ed] inconsistent legal theories").

At bottom, Colgate challenges the Plaintiffs'

characterization of the evidence of worksite exposure.  See ECF

No. 191 at 29.  There is a fine line between arguing that rumors

about the presence of asbestos[32] and invoices from a Maryland

defendant[33] are "circumstantial evidence" of the *possibility* of

worksite exposure, and arguing that the evidence does not

suggest exposure to asbestos from sources other than Cashmere

Bouquet.  However, to be sanctionable, "a legal position . . .

must have absolutely no chance of success."  *Hunter v.*

*Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002)

(internal quotation marks and citations omitted).  Given the

Fourth Circuit's instruction that district courts must

---

[32] *See* ECF No. 191-16 at 14, 22 (circumstantial evidence of
exposure suggested by Ms. Barlow's testimony that "she heard
that there may have been asbestos work done at RMR
Corporation").

[33] *See* ECF No. 191-17 at 4-5 (circumstantial evidence of exposure
from WECCO invoices concerning work done at DOA).

"resolv[e] all issues of law and fact in the plaintiff's favor"
when deciding whether the movant has met its "heavy burden" of
proving "no possibility" of relief, *Hartley*, 187 F.3d at 424,
the line drawn by the Plaintiffs in federal court was not
frivolous; indeed, it was enough to secure remand.  This is not
a case where, as in one case relied on by Colgate, a party
falsified facts to intentionally deceive a court.  *See Methode
Electronics, Inc. v. Adam Technologies, Inc.*, 371 F.3d 923, 928
(7th Cir. 2004) (plaintiff asserted false venue allegations to
obtain a convenient forum and possibly obtain injunctive
relief); ECF No. 191 at 28.

The Fourth Circuit has recognized that "[c]reative claims,
coupled even with ambiguous or inconsequential facts, may merit
dismissal, but not punishment." *Hunter*, 281 F.3d at 153
(*quoting Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th
Cir. 1991)).  Although thin, the Plaintiffs' contentions about
the possibility of relief against the Maryland defendants had
evidentiary support--or could have had evidentiary support,
after discovery. *See* Fed. R. Civ. P. 11(b)(3).  Accordingly,
sanctions under the federal rules or this Court's inherent power
are not merited. *Cf. Fahrenz v. Meadow Farm P'ship*, 850 F.2d
207, 210 (4th Cir. 1988) (affirming sanctions against the

plaintiff when key witnesses had repudiated the factual basis for the complaint).[34]  Colgate's motions will be denied.

    C.   Cross-Motions for Leave to File a Surreply

        1.   Legal Standard

Unless otherwise ordered by the Court, a party generally may not file a surreply.  Local Rule 105.2(a) (D. Md. 2011).  Leave to file a surreply may be granted when the movant otherwise would be unable to contest matters presented for the first time in the opposing party's reply.  *Khoury v. Meserve*, 268 F.Supp.2d 600, 605 (D. Md. 2003), aff'd, 85 F. App'x 960 (4th Cir.2004).

        2.   The Plaintiffs' Motion

The Plaintiffs assert several grounds meriting a surreply.  ECF No. 196 at 1-3.  Each will be discussed.

---

[34] Colgate also contends that the Plaintiffs should be sanctioned for telling Judge Nickerson and this Court that they "wanted to pursue the 'discovery process'" and "ha[d] not had the opportunity to build a full and fair evidentiary basis" for their claims.  ECF No. 191 at 20 (*citing* ECF Nos. 191-16 at 5, 13; 191-17 at 5, 13).  Although the Plaintiffs had accused Colgate of "[b]ypassing the discovery process" before they had the opportunity to build a full evidentiary basis, changing litigation strategy based on changed circumstances does not, in this Court's view, amount to sanctionable conduct.  Further, neither Judge Nickerson nor this Court granted remand on the basis of the status of discovery.  *See* ECF Nos. 191-2 at 9, 191-3 at 7.  Because the Court finds that the Plaintiffs did not engage in sanctionable conduct, it need not address their arguments that sanctions are improper because of Colgate's inconsistent positions in state and federal court and "material misrepresentations."  ECF No. 192 at 18, 21.

First, the Plaintiffs argue that a surreply is merited to respond to Colgate's "new" argument that "proof of a meritorious defense of fraudulent joinder is unnecessary to obtain Rule 60(b)(3) relief." *Id.* at 2 (*quoting* ECF No. 193 at 10 n.7 ("Colgate does not rely on Plaintiffs' fraudulent joinder of the Maryland defendants as the basis for its motion.")). However, Colgate's full sentence reads: "Similarly, [the] Plaintiffs' contention . . . that fraudulent joinder is not a basis for a Rule 60(b)(3) motion is irrelevant since, as discussed in text, Colgate does not rely on Plaintiffs' fraudulent joinder of the Maryland defendants as the basis for its motion." ECF No. 193 at 10 n.7 (citation omitted). The full sentence clarifies that Colgate was responding to an argument made by the Plaintiffs and not stating a new argument. Colgate's argument does not merit a surreply. *See Khoury*, 268 F. Supp. at 606.

Second, the Plaintiffs argue that Colgate's reply urges the Court to adopt a "new test" for proving fraudulent joinder: a "subjective 'no intent' test." ECF No. 193 at 2. However, Colgate did not urge the adoption of a new test; it offered an interpretation of the existing standard, one which it had raised in its opening brief. *See* ECF No. 191 at 24. Colgate's reply merely responded to the Plaintiffs' opposing argument. *See* ECF No. 193 at 11-15. Colgate's argument does not merit a surreply. *See Khoury*, 268 F. Supp. at 606; *Key Tidewater Ventures LLC v.*

33

*PNC Bank, N.A.*, No. CIV. JKB-14-2170, 2014 WL 5306716, at *5 (D. Md. Oct. 15, 2014) (surreply was impermissible when reply arguments were within the scope of the original motion).[35]

Third, the Plaintiffs seek leave to respond to new authority cited in Colgate's reply: *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 42 S. Ct. 35, 66 L. Ed. 144 (1921), and *Arriaga v. New England Gas Co.*, 483 F. Supp. 2d 177 (D.R.I. 2007). ECF No. 196 at 3. *Wilson* was not new authority; Colgate cited that case in its opening brief. *See* ECF No. 191 at 24 n.60. As to *Arriaga*, "[t]he Plaintiff's desire to interpret a case introduced by [Colgate] in [its] Reply is an insufficient ground for a surreply." *U.S. ex rel. Birckhead Elec., Inc. v. James W. Ancel, Inc.*, No. CIV. WDQ-13-2498, 2014 WL 2574529, at *3 (D. Md. June 5, 2014).

Finally, the Plaintiffs generally argue that the "important and complex issues of fact and law" merit surreply memoranda. To the contrary, the opening, response, and reply briefs amply explained the relevant issues; a surreply is unnecessary. Accordingly, the Plaintiffs' motions will be denied; Colgate's conditional cross-motions for leave to respond to the surreply will be denied as moot.

---

[35] For the same reasons, the Plaintiffs are not entitled to file a surreply to respond to Colgate's argument that a lack of intent to pursue a claim necessarily means that the claim has "no possibility of success." ECF No. 196 at 3.

III. Conclusion

For the reasons stated above, Colgate's motions for vacatur and sanctions will be denied; the Plaintiffs' motions for leave to file a surreply will be denied; Colgate's conditional cross-motion for leave to respond to the surreply will be denied as moot.


__10/8/15_____
Date

_____
William D. Quarles, Jr.
United States District Judge